21-2805
*United States v. Wright*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of July, two thousand twenty-six.

PRESENT:    DENNY CHIN,
            STEVEN J. MENASHI,
            MARIA ARAÚJO KAHN,
                *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

       *Appellee,*

   v.                                                    No. 21-2805

JOHN WRIGHT,

       *Defendant-Appellant.*[*]

_____

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

*For Defendant-Appellant*:    Ameer Benno, Benno & Associates, P.C., New York, NY.

*For Appellee*:    Thomas R. Sutcliffe, Paul D. Silver, Assistant United States Attorneys, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, J.) and from an order of the United States District Court for the Northern District of New York (Suddaby, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant John Wright appeals from a judgment of conviction entered in the Northern District of New York sentencing him to 70 months of imprisonment for conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count 1), possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count 3), conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (h) (Count 4), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 5), and possession of a firearm and ammunition following a felony conviction in violation of 18 U.S.C. § 922(g)(1) (Count 6). Wright pleaded guilty to these counts pursuant to a conditional plea agreement that reserved his right to appeal the denial of his motion to suppress evidence recovered after officers stopped his vehicle, searched his person and vehicle, entered his residence before obtaining a warrant, and later executed search warrants for his residence, vehicle, and person. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

# I

In 2017, the Oswego County Drug Task Force (a consortium of state and federal law enforcement agencies) and the Syracuse Police Department began investigating a drug trafficking organization smuggling marijuana from Canada into the Akwesasne Reservation and distributing it throughout New York. Around July 2017, the Task Force began investigating Wright in connection with the drug trafficking organization. In mid- to late July, Task Force members obtained an eavesdropping warrant to intercept communications from a cellphone they believed belonged to Wright. Based on intercepted communications and surveillance of Wright's residence, officers believed that Wright was receiving large amounts of marijuana and distributing that marijuana in Syracuse.

On August 22, 2017, after intercepting communications that officers understood to indicate Wright was about to make a marijuana sale, officers observed Wright leave his residence in his vehicle; Detective Quinn trailed Wright for approximately two miles and then engaged his emergency lights in an attempt to stop Wright's vehicle. Wright activated his right-hand turn signal but continued to drive for about two city blocks at a very slow speed before coming to a stop on the right side of the road. Once Wright stopped his car, Detective Quinn and other officers approached the vehicle. As he approached, Detective Quinn smelled marijuana. Officers arrested Wright and searched his person and car. The search of Wright's person yielded $90 in cash and a cellphone. The search of Wright's car yielded "a gray plastic grocery bag" with "a quantity of green/brown plant material" that a field test confirmed was marijuana. App'x 176-77. The bag contained 4.11 ounces of marijuana.

Meanwhile, the Task Force and Syracuse Police Department continued surveillance on Wright's residence. Around 6:45 pm on August 22, officers observed a gray vehicle pull up in front of Wright's home; several individuals, including a woman on a phone, exited the vehicle and began "frantically knocking on the front door of the house" and it "looked like they were yelling up towards

3

the second floor windows." *Id.* at 220-21. It appeared to the officers that the individuals "were trying to get somebody's attention inside that residence." *Id.* at 220; *see also id.* at 222. The surveillance team communicated this information to the officers who had stopped Wright's vehicle, and a "small group" of officers returned to Wright's home in order "to secure that residence"—that is, "to enter the residence and search for anyone who may be inside … to prevent the destruction of evidence or the escape of any other suspects that could be inside." *Id.* at 179. When the group arrived, officers conducted what they termed a "protective sweep" of Wright's residence—a brief search lasting between thirty seconds and one minute—during which they observed a loaded shotgun leaning against the bedroom wall, two boxes of ammunition on the floor in the closet, and two large duffle bags "emanating a strong odor of unburned Marihuana." *Id.* at 266. Later that evening, a judge of the Syracuse City Court issued search warrants for Wright's residence, person, and vehicle. Detective Quinn had begun preparing the application for the warrants several days earlier. The subsequent search of Wright's residence yielded four pounds of marijuana, a loaded shotgun, a loaded handgun, and $11,000 cash.

Wright moved to suppress the evidence recovered from the stop, arrest, warrantless entry of his residence, and subsequent search. The district court denied the motion, concluding that (1) the stop was lawful, (2) the warrantless entry was justified as a protective sweep and the evidence observed during the sweep would inevitably have been discovered, and (3) the search warrants were supported by probable cause. *See United States v. Wright*, No. 19-CR-24 (N.D.N.Y. Oct. 19, 2020), ECF No. 189. Wright appealed the suppression ruling.

While Wright's appeal was pending, the government disclosed that Detective Quinn had incorrectly testified at the suppression hearing that an additional cellphone had been found in Wright's vehicle. *See* Letter from United States Attorney Carla B. Freedman, *United States v. Wright*, No. 21-2805 (2d Cir. Jan. 12, 2023), ECF No. 117. In response to the government's disclosure, Wright sought, and this court granted, permission to file a supplemental brief addressing

Detective Quinn's misstatement. *See* Motion, *Wright*, No. 21-2805 (2d Cir. Jan. 17, 2023), ECF No. 120; Order, *Wright*, No. 21-2805 (2d Cir. Jan. 19, 2023), ECF No. 124. In his supplemental brief, Wright argued that Detective Quinn committed perjury at the suppression hearing and that the perjury required reversal of Wright's conviction and dismissal of the indictment. *See* Appellant's Supp. Br. 2-19. Wright also argued that his defense counsel's failure to press Detective Quinn on his claim that "an additional phone" was found in Wright's car amounted to ineffective assistance of counsel in violation of Wright's Sixth Amendment right. *See id.* at 19-22. We remanded the case for the district court to conduct further factfinding regarding Detective Quinn's misstatement. *See* Order, *Wright*, No. 21-2805 (2d Cir. Jun. 18, 2024), ECF No. 176.

On remand, the district court (Suddaby, J.) held an evidentiary hearing and issued a decision and order setting forth findings of fact. *See* Decision and Order, *Wright*, No. 19-CR-24 (N.D.N.Y. Feb. 10, 2025), ECF No. 334. The district court found that (1) Detective Quinn's misstatement resulted from confusion, mistake, or faulty memory rather than a willful intent to testify falsely, (2) the government neither knew nor should have known of the error when it occurred, (3) the misstatement did not affect the suppression ruling, and (4) Wright's trial counsel was not constitutionally ineffective.

## II

Wright argues that the district court erred in denying his motion to suppress because the officers lacked reasonable suspicion and probable cause to stop his vehicle, unlawfully entered his residence without a warrant, and obtained search warrants unsupported by probable cause. We disagree.

## A

Wright first argues that the district court erred in declining to suppress evidence recovered after the stop of his vehicle because the officers lacked reasonable suspicion or probable cause to stop him, search his vehicle, and arrest

him. Wright's argument fails because the stop was supported by reasonable suspicion.

We review *de novo* the district court's determination that reasonable suspicion or probable cause existed. *See United States v. Arvizu*, 534 U.S. 266, 275 (2002). Reasonable suspicion "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (emphasis omitted) (quoting *Prado Navarette v. California*, 572 U.S. 393, 402 (2014)). A court "must permit officers to make 'commonsense judgments and inferences about human behavior.'" *Id.* at 380-81 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). The standard "is satisfied as long as authorities can point to 'specific and articulable facts which, taken together with rational inferences from those facts,' provide a 'particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Patterson*, 25 F.4th 123, 136 (2d Cir. 2022) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968), and *Arvizu*, 534 U.S. at 273). "[T]he reasonable suspicion standard is 'not high.'" *Id*. (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)). "[A]uthorities need only have 'facts sufficient to give rise to a reasonable suspicion that criminal activity may be afoot.'" *Id*. (quoting *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014)).

In this case, the district court did not err in concluding that the traffic stop was supported by reasonable suspicion. In the days and weeks leading to the traffic stop, members of the Task Force (1) observed a vehicle suspected of transferring large quantities of marijuana parked at Wright's residence, (2) observed Wright meet with individuals in parking lots and residences to exchange plastic bags, (3) observed Wright meet Chad Garrow—a known participant in the drug organization—and give him a plastic bag containing $20,000 in cash, and (4) intercepted communications between Wright and Josh Francis—the head of the drug organization—that they understood to concern drug dealing activities. These observations and communications provided "specific and articulable facts which, taken together with rational inferences from those facts,"

6

supported the conclusion that Wright was involved in drug trafficking. *Patterson*, 25 F.4th at 136 (quoting *Terry*, 392 U.S. at 21).

It was reasonable for officers to interpret Wright's August 22 communications as indicating that he was about to engage in a marijuana transaction. Officers intercepted a call between Wright and an unidentified individual whom they suspected to be a marijuana customer based on previously intercepted communications; Wright and the unidentified individual planned to meet that evening; and officers observed Wright leaving his home immediately after arranging that meeting. A reasonable officer under those circumstances could believe that, as Wright drove away from his home, he was "engaged in or about to be engaged in criminal activity." *United States v. Wallace*, 937 F.3d 130, 137 (2d Cir. 2019) (quoting *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017)). We conclude that the district court properly denied the motion to suppress the evidence recovered through the traffic stop.

**B**

Wright next argues that the district court erred in declining to suppress evidence observed during the warrantless entry of his residence because the entry was not justified as a protective sweep. We review the district court's factual determination that exigent circumstances existed for clear error, *see United States v. Klump*, 536 F.3d 113, 117 (2d Cir. 2008), and its application of the inevitable discovery doctrine *de novo*, *see United States v. Mendez*, 315 F.3d 132, 135 (2d Cir. 2002). The district court did not clearly err in reaching either conclusion.

Warrantless searches "are per se unreasonable, subject to a few well-delineated exceptions." *United States v. Vasquez*, 638 F.2d 507, 529-30 (2d Cir. 1980). Two such exceptions are relevant here. First, a warrantless entry may be justified by exigent circumstances, including "the need 'to prevent the imminent destruction of evidence.'" *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable,

experienced officer to believe that there was an 'urgent need to … take action.'" *Klump*, 536 F.3d at 117-18 (citation omitted) (quoting *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990)). Second, officers may enter a home without a warrant to conduct a "protective sweep," which is "a quick and limited search of premises, incident to arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). The Supreme Court has held in the context of an in-home arrest that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id*. at 334.

Although these exceptions are analytically distinct, our court has combined the doctrines in cases in which officers arrested a suspect outside a residence and then entered the residence based on concerns that third persons inside might destroy evidence, escape, or threaten officer safety. *See United States v. Oguns*, 921 F.2d 442, 446 (2d Cir. 1990); *Vasquez*, 638 F.2d at 531-32. In that setting, we have held that a warrantless entry to conduct a protective sweep is lawful if the officers have "(1) a reasonable belief that third persons were inside, and (2) a reasonable belief that the third persons were aware of the arrest outside the premises so that they might destroy evidence, escape or jeopardize the safety of the officers or the public." *Oguns*, 921 F.2d at 446 (alterations omitted) (quoting *Vasquez*, 638 F.2d at 531).

Here, although the arrest was not adjacent to the residence, the district court did not clearly err in concluding that the protective sweep was permissible. The officers could have reasonably believed that Wright's residence contained evidence of drug trafficking because they had observed Wright leave his home with plastic bags and exchange those bags with third parties and had observed a vehicle suspected of transporting large quantities of marijuana parked at Wright's residence. And officers could have reasonably believed that third persons inside the residence were aware of Wright's arrest and might destroy that evidence: Wright did not immediately stop when pulled over, giving him time to contact a

8

third party about his arrest, and in any event his arrest on a populated street close to his residence could have been observed by interested persons nearby. Immediately after the arrest, a group of individuals arrived at Wright's home and began banging on the door and shouting toward a second-story window as if "they were trying to get somebody's attention inside [Wright's] residence." App'x 220. On these facts, the officers could have reasonably believed "that third persons were inside" and "that the third persons were aware of the arrest outside the premises so that they might destroy evidence." *Oguns*, 921 F.2d at 446 (alterations omitted) (quoting *Vasquez*, 638 F.2d at 531).

The district court also did not err in concluding that the evidence from the protective sweep was not required to be suppressed for the independent reason that it would inevitably have been discovered pursuant to a lawful search warrant. Evidence obtained even through an unlawful search may be admissible if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *United States v. Cabassa*, 62 F.3d 470, 472 (2d Cir. 1995) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). The doctrine requires a court to consider "affairs as they existed at the instant before the unlawful search" and determine "what would have happened had the unlawful search never occurred." *Id*. at 473 (emphasis omitted) (quoting *United States v. Eng*, 997 F.2d 987, 990 (2d Cir. 1993)). "[I]llegally-obtained evidence will be admissible under the inevitable discovery exception to the exclusionary rule only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006).

Here, the government has shown "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means," namely through the later-issued search warrant. *Nix*, 467 U.S. at 444. Detective Quinn had begun drafting the warrant application days before the entry; Wright and his residence had been targets of the investigation for weeks. Even

9

without the evidence observed during the sweep, the officers had significant evidence that Wright was involved in drug trafficking from his residence: the officers had observed Wright engaging in suspected drug transactions after leaving his home, intercepted communications concerning marijuana transactions, and recovered $20,000 from Garrow, a suspected member of the drug trafficking conspiracy, after his meeting with Wright. And warrants were ultimately issued only hours after the sweep. On these facts, we conclude "with a high level of confidence" that the evidence from the protective sweep would have inevitably been discovered based on the search warrant. *Heath*, 455 F.3d at 60; *see also United States v. Whitehorn*, 829 F.2d 1225, 1231-33 (2d Cir. 1987) (applying the inevitable-discovery doctrine when the FBI had "overwhelming probable cause" based on lawfully obtained evidence and obtained a warrant six hours after an illegal search).

The evidence observed during the sweep was independently admissible either as the product of a justified protective sweep or pursuant to the inevitable-discovery doctrine.

## C

Wright further argues that the district court erred in declining to suppress evidence obtained pursuant to the search warrants because the warrants were not supported by probable cause. Wright's argument fails because the warrants were supported by probable cause and, in any event, the officers relied on the warrants in good faith.

"[I]n the context of a warrant-based search, 'we accord substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting our inquiry to whether the officer had a substantial basis for his determination.'" *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022) (alteration omitted) (quoting *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019)). Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."

10

*Ornelas v. United States*, 517 U.S. 690, 696 (1996). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). And "[e]ven where a warrant was issued without probable cause in violation of the Fourth Amendment, suppression of the evidence is not automatic." *Jones*, 43 F.4th at 110 (quoting *Boles*, 914 F.3d at 103). A "'good-faith exception' to the exclusionary rule applies when the agents executing a search warrant 'act with an objectively reasonable good-faith belief that their conduct is lawful.'" *Id*. at 111 (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).

Here, the district court did not err in concluding that the warrants were supported by probable cause. Detective Quinn's affidavit described the investigation into a marijuana trafficking organization operating between Canada and Syracuse, the eavesdropping warrant for Wright's cellphone, intercepted communications indicating that Wright was selling marijuana, officers' observations of Wright leaving his residence with plastic bags or a backpack and meeting with others to exchange those items, an observed hand-to-hand transaction shortly after intercepted communications indicated that Wright was about to make a marijuana sale, the August 22 stop of Wright's vehicle and observation of a loaded shotgun, ammunition, and marijuana-scented duffel bags during the protective sweep, the known criminal histories of several individuals with whom Wright met, and Wright's prior conviction for criminal possession of a weapon. The district court was also entitled to credit Detective Quinn's expert law enforcement opinion that there was probable cause to believe evidence of a crime would likely be found in Wright's home, vehicle, and on his person because "an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). These facts satisfied "the low threshold for probable cause" because it was "at least arguably reasonable for the issuing magistrate to draw the common-sense inference" that Wright was engaged in a drug conspiracy. *Jones*, 43 F.4th at 110.

Suppression would be unjustified for the independent reason that the good-faith exception applies. The officers executing the warrants acted with "an

objectively reasonable good-faith belief that their conduct [was] lawful," *id*. at 111 (quoting *Davis*, 564 U.S. at 238), and Detective Quinn's affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *United States v. Leon*, 468 U.S. 897, 923 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)). The district court did not err in declining to suppress the evidence obtained pursuant to the search warrants.

## III

Wright argues that Detective Quinn's false testimony at the suppression hearing requires reversal of the suppression ruling, reversal of his conviction, or dismissal of the indictment. He additionally argues that his trial counsel was constitutionally ineffective for failing to cross-examine Quinn about that testimony. Again, we disagree.

## A

Wright claims that Detective Quinn committed perjury at the suppression hearing, so Wright's conviction must be reversed and the indictment dismissed, or at least the district court's denial of the suppression motion must be reversed. We hold that the district court did not clearly err in finding that Detective Quinn did not commit perjury.

Alleged perjury warrants a new trial or reversal of a conviction only if "the witness actually committed perjury" and "the alleged perjury was material." *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000). "One of the factual predicates for a finding of perjury is willfulness—that is, the false testimony must have been given 'with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Orelien*, 119 F.4th 217, 229 (2d Cir. 2024) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001). "Because intent is a question of fact, such a finding is subject to the clear error standard."

12

*United States v. Case*, 180 F.3d 464, 467 (2d Cir. 1999). And "where there are two permissible views of the evidence," the district court's "choice between them cannot be clearly erroneous." *United States v. Medunjanin*, 752 F.3d 576, 585 (2d Cir. 2014) (alteration omitted) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

Here, the district court did not clearly err in finding that Quinn's misstatement "resulted from confusion, mistake, and/or faulty memory, and not from a willful intent to provide false testimony." Second Supp. App'x 87. The district court credited Quinn's explanation that when he mentioned an additional cellphone "he may have been referring to 'some sort of electronic device' that he had seen in the center console area of [Wright's] vehicle." *Id.* at 88 (quoting Transcript of Evidentiary Hearing at 9, *Wright*, No. 19-CR-24 (N.D.N.Y. Feb. 4, 2025), ECF No. 338). The district court also relied on "Detective Quinn's convincing demeanor and body language," including "his tone of voice, facial expressions, and eye contact," and credited Quinn's characterization of "the events that occurred at the time of the stop as being 'chaotic,' during which he was 'busy doing a number of different things.'" *Id.* (quoting Transcript of Evidentiary Hearing at 9, 26-27, *Wright*, No. 19-CR-24 (N.D.N.Y. Feb. 4, 2025), ECF No. 338). The district court further observed that the misstatement was "brief" and "occurred in the middle of a lengthy hearing." *Id.* at 89. We "accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996).

Because the district court identified reasons why Quinn's misstatement could have resulted from confusion, mistake, or faulty memory rather than a willful intent to provide false testimony, the district court's finding was at least a "permissible view[] of the evidence" and therefore "cannot be clearly erroneous." *Medunjanin*, 752 F.3d at 585 (quoting *Anderson*, 470 U.S. at 574). Reversal of the

suppression ruling, reversal of Wright's conviction, or dismissal of the indictment is unwarranted.

**B**

Finally, Wright argues that his trial counsel was ineffective for failing to cross-examine Detective Quinn regarding his misstatement about the number of phones found in Wright's vehicle. This claim fails because it has been rendered moot by the remand proceedings below and, in any event, Wright has not shown prejudice.

We review a claim of ineffective assistance of counsel *de novo* and the district court's underlying factual findings for clear error. *See United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007); *Davis v. Greiner*, 428 F.3d 81, 92 (2d Cir. 2005). To succeed on an ineffective assistance of counsel claim, a defendant must establish prejudice, meaning "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Accordingly, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

As a threshold matter, Wright has already received the remedy that would be appropriate for the alleged error of his counsel. "[A] finding of ineffective assistance requires a remedy specifically tailored to the constitutional error" and the proper remedy "is one that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error." *United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000). In this case, our court remanded for further factfinding. And the district court reconsidered the suppression ruling with full knowledge of Detective Quinn's misstatement and reaffirmed its prior ruling. *Cf. United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370,

14

396 (2d Cir. 2001) (concluding it was unnecessary to vacate and remand because of newly disclosed evidence of perjury when the trier of fact "reconsidered the matter with full knowledge" of the new perjury evidence and "specifically affirmed its earlier decision"). Because Wright has already received a remedy for the purported ineffectiveness of his counsel, the claim is moot.

In any event, Wright's claim fails because he has not shown prejudice. The district court found that "Judge McAvoy's denial of [Wright's] motion to suppress did not depend on the number of phones police found in his car and Detective Quinn's misstatement did not, and does not, adversely affect his credibility." Second Supp. App'x 84. That finding was not clearly erroneous. The order denying the suppression motion did not rely on the existence of multiple phones; it stated only that officers recovered "a cellphone" or "an LG Smartphone" from Wright. Special App'x 2, 22. Instead, the district court denied the motion to suppress because it concluded that a reasonable officer could believe that Wright had contacted someone about his arrest or that someone had observed the arrest and contacted interested parties. *Id*. at 32. That rationale does not depend on the existence of a second phone. Nor did the district court clearly err in concluding that Detective Quinn was a credible witness notwithstanding his misstatement. On remand, the district court credited Quinn's "convincing demeanor and body language," the consistency of his explanation for the misstatement, and the fact that the misstatement was isolated and occurred during a lengthy hearing. Second Supp. App'x 88. We owe "great deference" to that credibility determination. *Donato*, 96 F.3d at 634.

Because the suppression ruling did not depend on the number of phones recovered, and because the district court did not clearly err in crediting Detective Quinn's testimony notwithstanding the misstatement, Wright has not shown a reasonable probability that the result of the suppression hearing would have been different had his counsel cross-examined Detective Quinn regarding the misstatement. The district court did not err in rejecting Wright's ineffective-assistance claim.

15

\*     \*     \*

We have considered Wright's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court